UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JOHN BRAWNER and
RENEA BRAWNER                                                                           PLAINTIFFS

v.                                          CASE NO. 4:07-CV-00482 GTE

ALLSTATE INDEMNITY COMPANY                                                  DEFENDANT

**ORDER**

Presently before the Court are Defendant's Motion for Partial Summary Judgment (Docket No. 74), Plaintiffs' Second Motion for Partial Summary Judgment (Docket No. 79), Plaintiffs' Third Motion for Summary Judgment (Docket No. 82), Plaintiffs' Motion in Limine (Docket No. 86), and Plaintiffs' Motion in Limine; Motion for Sanctions as to Allstate Indemnity Company (Docket No. 87).

**I.      Background**

Allstate Indemnity Company issued insurance policy number 921028867 to Jonathan and Renea Brawner, insuring real and personal property located at 10 Dakota Drive, Conway, Arkansas 72032-9481.  On May 18, 2006, Plaintiffs' residence was destroyed by fire.  Allstate Indemnity Company, by and through its employee, Sandra Hendrick, investigated the fire loss, and subsequently denied the Plaintiffs' claim.  However, Plaintiffs assert that the Defendant did not adequately investigate the claim and did not have an adequate basis for denying the claim.

Allstate Indemnity Company retained Unified Investigations and Sciences, Inc. to investigate the origin and cause of the fire.  Unified Investigations and Sciences, Inc. concluded the original ignition of the fire occurred at or near floor level of the master bedroom and the cause of the fire was incendiary consistent with deliberate disbursement and ignition of a liquid

1

accelerant. Plaintiffs retained Kim May, an expert in the investigation of the cause and origin of fires, who opined that the origin of the fire was in the master bedroom and the cause of the fire was incendiary and most likely the result of an intentional human act.

The Brawners removed contents from the home two days prior to the fire. Mr. Brawner testified in his deposition that Plaintiffs were behind on several of their financial obligations, including child support, the mortgage, utilities, and vehicles, their only credit card was maxed out, and he had not made payments on a student loan for several years.

On May 18, 2006, the date of the fire, Regions Mortgage held a first mortgage on the property in the name of Renea Hawkins Young, now Renea Brawner. The mortgage had not been paid for seven months, and the law firm of Dyke, Henry, Goldsholl & Winzerling, P.L.C. ("the law firm") was retained by Regions Mortgage to execute a statutory foreclosure on the property at 10 Dakota Drive. However, the Brawners deny any knowledge that they were seven months behind on their mortgage or that any law firm had been retained to foreclose on the property.

In her affidavit, Crystal Fortier, a legal assistant at the law firm states that, on two separate dates, she caused "Mortgagee's Notice of Default and Intention to Sell" along with correspondence signed by attorney J. Benton Dyke, Jr. To be sent by Certified and First Class Mail, postage prepaid, to Renea Hawkins Young, the current spouse of Renea Hawkins Young, Tenant, and others to the following addresses: 7700 North Hills Blvd., Apt. 103, North Little Rock, AR 72116; P.O. Box 185, Conway, AR 72033-0185; and 10 Dakota Drive, Conway, AR 72032-9481. While the Certified Mail sent to each address came back unclaimed, the First Class Mail sent to P.O. Box 185, Conway, AR 72033-0185 and 10 Dakota Drive, Conway,

AR 72032-9481 were not returned to her office as undelivered. On May 18, 2006, P.O. Box 185 in Conway, Arkansas, was in the name of Plaintiffs. The Brawners state that they never received any such notice of the foreclosure.

Plaintiffs testified that they were selling their house to Benjamin Eagle, and the closing was to occur on May 19, 2006, the day after the fire. Mr. Brawner testified that Mr. Eagle was to present certified funds at the closing and pay him the difference. Mr. Eagle testified that he did not obtain an appraisal on or do a title search at the Faulkner County Courthouse on the residence at 10 Dakota Drive. He also testified that it was his understanding that the sale was to be owner financed, meaning that the Plaintiffs "were going to carry the paper for it until [he] had obtained a new mortgage on the property," which he expected to do within three to six months. At his deposition, Mr. Eagle provided an "Offer to Purchase Real Estate," which was not dated and was signed by himself and Mr. Brawner, and a receipt for "earnest money" signed by Mr. Brawner. Mr. Eagle provided a "Offer to Purchase Real Estate" signed by himself and Mr. Brawner dated May 16, 2006, to Mr. Ray Sorrows. Finally, Mr. Eagle acknowledged his signature on a third "Offer to Purchase Real Estate" signed by himself and Mr. Brawner, which has a typewritten date of April 4th, 2006.

The Brawners filed a complaint with the Arkansas Insurance Department. Through its investigator, Larry Cagle, the Arkansas Insurance Department concluded the claim did not support any violation of Arkansas Insurance Statutes or Arkansas Insurance Rules that the department regulates. In their Complaint filed in this case, Plaintiffs allege breach of the implied covenant of good faith and fair dealing, slander, breach of the insurance contract, outrage, bad faith, and negligence.

## II.     Summary Judgment Standard

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.    Defendant's Motion for Partial Summary Judgment (Docket No. 74)

Defendant moves for summary judgment on Plaintiff's allegations of bad faith, which would include the claim of breach of the implied covenant of good faith and fair duty, and the Plaintiffs' alleged entitlement to punitive damages arguing that Allstate's actions in its investigation and denial of Plaintiffs' claim do not constitute bad faith.  Defendants also move for summary judgment on Plaintiffs' claims of slander, intentional infliction of emotional distress, misrepresentations by Allstate, and negligence of Allstate.

### A.     Bad Faith/Breach of the Implied Covenant of Good Faith and Fair Duty

"The standard for establishing a claim for bad faith is rigorous and difficult to satisfy." *Unum Life Ins. Co. of America v. Edwards*, 362 Ark. 624, 627, 210 S.W.3d 84, 87 (2005).  "The tort of bad faith requires affirmative misconduct, without a good faith defense; the affirmative misconduct must be dishonest, malicious, or oppressive in an attempt to avoid the insurer's

liability under an insurance policy." *Reynolds v. Shelter Mut. Ins. Co.*, 313 Ark. 145, 852 S.W.2d 799 (1993). "The tort of bad faith does not arise from a mere denial of a claim." *Edwards*, 362 Ark. at 628, 210 S.W.3d at 88. "[M]ere negligence or bad judgment is insufficient so long as the insurer is acting in good faith." *Id*.

The Arkansas Supreme Court has held, for example, that "nightmarish red tape, an abrupt attitude evidenced by an insurance representative about higher premium costs following cancellation of a group policy, and confusion over the referral process did not amount to bad faith." *Id*. "Nor did the fact that an insurance company waited three months to investigate a claim." *Id*. "Examples of cases where [the Arkansas Supreme Court has] found substantial evidence of bad faith include where an insurance agent lied by stating there was no insurance coverage; aggressive, abusive, and coercive conduct by a claims representative, which included conversion of the insured's wrecked car; and where a carrier intentionally altered insurance records to avoid a bad risk." *Id*.

Defendant states that the notice of foreclosure and the sale of the home to Benjamin Eagle are at least arguably questions of fact. However, Defendant states that the discrepancies discovered in Allstate's investigation certainly supports the denial of the Plaintiffs' claim. Defendant also states that Plaintiffs own experts admit Allstate had a reason to investigate, admit the fire was incendiary, and admit that reasonable people could find that Plaintiff had motive.

Plaintiffs assert that Defendants took the affirmative action of accusing the Brawners of being arsonists without adequate proof. Plaintiffs further assert that "the Defendant concluded that the Brawners were arsonists and denied their claim because, according to the Defendant, the fire was intentionally set, because the Brawners had financial motive, and because the Brawners

had been moving items from the home in the days prior to the fire," but "none of these reasons provide even a circumstantial basis for implicating the Brawners in the fire. However, the Court has previously concluded that "Defendants have submitted sufficient evidence to show that there is a genuine issue as to the material facts regarding whether Plaintiffs, or one of them, intentionally set the fire or caused it to be set, and as to whether the Plaintiffs, or one of them, intentionally concealed and/or misrepresented material facts relating to the fire and to their claim submitted to Defendant." It follows that if a reasonable juror could find that the Plaintiffs, or one of them, intentionally set the fire, or caused it to be set, Defendant did not act in bad faith by stating the reason for the denial, in part, was that the fire was of an incendiary origin for which Plaintiffs or someone on their behalf was responsible. The fact that a reasonable person could reach the opposite conclusion does not amount to bad faith–only the possibility of a wrongful denial of Plaintiffs' claim. Therefore, these facts do not constitute a basis for bad faith.

Plaintiffs also assert that Defendant's denial of the Brawners' claim for misrepresentation constitutes bad faith. Plaintiffs state that Defendant maintains that Plaintiffs misrepresented the following facts: (1) the extent of the deficiency of their mortgage; (2) their knowledge of the impending foreclosure sale; (3) the amount of the contents in the home at the time of the fire; (4) the cause of the fire; and (5) the sale of the home. Plaintiffs argue that the denial based on misrepresentation constitutes bad faith because Defendant has no direct evidence to establish any of the alleged misrepresentations and cannot establish that any of the alleged misrepresentations were made knowingly and with an intent to deceive. While there are clearly questions of fact as to whether Plaintiffs in fact made the aforementioned misrepresentations knowingly and with an intent to deceive, Defendants clearly had a logical basis for making each of the allegations of

misrepresentation. Therefore, no bad faith can be found in Defendant's denial of the Brawners' claim for misrepresentation.

Next, Plaintiffs argue that the denial of the Brawners' claim on the basis of a fraudulent sworn statement and proof of loss constitutes bad faith. Plaintiffs state that the Defendant claimed that the statement and proof of loss were fraudulent because it believes that the Brawners set the fire, and therefore, should have listed the cause of the fire. Plaintiffs contend that because Defendant has no evidence that the Brawners set the fire, the denial on this basis constitutes bad faith. Even though questions of fact remain as to whether the Plaintiffs submitted a fraudulent sworn statement and proof of loss, Defendant had an adequate basis for denial. Therefore, no bad faith can be found in Defendant's denial on the basis of fraud.

Plaintiffs also argue that Defendant's agents actively concealed the extent of the Brawners' coverage. Specifically, Plaintiffs allege that Ms. Holly Goodwin told the Brawners that their policy required them to continue making payments on their mortgage and that their policy provided that they would be given an allowance to live on, but Defendant failed to reimburse the Brawners according to Ms. Goodwin's representations. Additionally, Plaintiffs allege that Ms. Goodwin failed to disclose that the Brawners were entitled to payment for other things destroyed by or incurred as a result of the fire, such as the loss of plants and shrubs and the removal of debris. Plaintiffs state that they only learned the true extent of their coverage after thoroughly reviewing the policy on their own.

In *Columbia Nat. Ins. Co. v. Freeman*, 347 Ark. 423, 430, 64 S.W.3d 720, 723-24 (2002), the insureds testified that they submitted copies of their bills and mailed the documentation to the adjustor, but the adjustor testified that he only received a handwritten list of bills and

declined to pay the expenses due to inadequate documentation. The Arkansas Supreme Court held that the issue of whether the insurer received the appropriate documentation was one for the jury to resolve based upon the credibility of the witnesses, and that there was sufficient evidence for a jury to determine that the failure to cover the insureds' ongoing business expenses, to which they were entitled, was an act of bad faith. *Id*. Also on the issue of bad faith, the Court found that there was sufficient evidence to present to the jury the question of whether the insurer's agent agreed to provide a trailer as a temporary location for their business, researched the cost of providing such a service, and then failed to go forward with the agreement, and whether the insureds and insurer entered into an agreement regarding the cost of repairs that was breached by the insurer. *Id*.

Defendant correctly states that "Arkansas places the duty on the policyholder to educate himself concerning his insurance coverage." *Canal Ins. Co. v. Ashmore*, 126 F.3d 1083, 1086 (8th Cir. 1997). Here, Defendant cannot be held liable for bad faith without some indication that Defendant intentionally failed to disclose information regarding coverage with some dishonest, malicious or oppressive intent, as negligence will not suffice. Ms. Brawner testified that after learning that she and her husband were entitled to payment for additional items destroyed by or expenses incurred as a result of the fire, she called Holly Goodwin who stated that she did not know about those items in the policy and that no one had every asked for that in the past. Even accepting this account as true, Defendant "did not exhibit the kind of 'hatred, ill will, or . . . spirit of revenge' that Arkansas requires as a predicate for a recovery for bad faith." *Southern Pine Helicopters, Inc. v. Phoenix Aviation*, 320 F.3d 838, 844 (8th Cir. 2003).

Also, even assuming that Ms. Goodwin mistakenly told Plaintiffs that their policy required them to continue making payments on their mortgage and that their policy provided that they would be given an allowance to live on, but Defendant failed to reimburse Plaintiffs accordingly, Plaintiffs have not set forth any evidence to indicate that Defendant made those representations with hatred, ill will, or a spirit of revenge. Therefore, summary judgment is proper as to Plaintiffs' claim of bad faith.

### B.     Punitive Damages

Aside from asserting that they have established a prima facie case for the tort of bad faith, Plaintiffs have not addressed Defendant's assertion that it is entitled to summary judgment as to punitive damages. As discussed above, Plaintiffs cannot establish that Defendant engaged in affirmative misconduct that was dishonest, malicious, or oppressive to constitute the tort of bad faith. While punitive damages are available on a bad faith insurance claim, because that claim does not survive summary judgment, Plaintiffs' punitive damages claim must also fail. *Id*. at § 9:3, p. 116. Additionally, "[n]egligence alone, no matter how gross, is never enough to support punitive damages." Howard W. Brill, *Arkansas Law of Damages* § 9:2, p. 111 (5th ed. 2004). Therefore, summary judgment is proper as to Plaintiffs' punitive damages claim.

### C.     Slander

Defendant asserts that it is entitled to summary judgment on Plaintiffs' claim of slander because Plaintiffs have neither pled any facts supporting their claim of slander, nor produced proof of the elements of slander. The following elements must be proved to support a claim of slander: "(1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's

9

fault in the publication; (5) the statement's falsity; and (6) damages." *Northport Health Services, Inc. v. Owens*, 356 Ark. 630, 641, 158 S.W.3d 164, 171 (2004).

Plaintiffs assert that Defendant published its defamatory accusation against the Brawners to at least one third party. Specifically, Plaintiffs state that Mr. Read, a representative of the Defendant, specifically stated in his deposition, in which numerous third parties were present that "we believe they either set the fire or that [sic] had the fire set on their behalf." Plaintiffs further state that Defendant published this accusation to the Court and to the public at large in its Answer and other Pleadings. However, a statement made by a party or an attorney in a judicial pleading, provided the statement is relevant to the issues in the case, and statements of an attorney that are preliminary to a proposed judicial proceeding that is contemplated in good faith and under serious consideration are absolutely privileged. Howard W. Brill, *Arkansas Law of Damages* § 33:10, p. 631 (5th ed. 2004). Clearly, statements made by the Defendant's representative during a discovery deposition in this case and statements made in the Defendant's Answer and other Pleadings fall within this privilege.[1] Therefore, summary judgment is appropriate as to Plaintiffs' slander claim.

### D. Intentional Infliction of Emotional Distress or Outrage

Defendant contends that Plaintiffs have not produced any proof in discovery to substantiate their claim of outrage. "To establish a claim for the tort of outrage, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct

---

[1] Defendant argues that the question of privilege is one for the jury. However, the cases cited by Plaintiffs refer to a qualified privilege, rather than an absolute privilege.

was 'extreme and outrageous,' was 'beyond all possible bounds of decency,' and was 'utterly intolerable in a civilized community;' (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it." *Marlar v. Daniel*, 368 Ark. 505, - - S.W.3d - - (2007) (citing *Crawford v. Jones*, 365 Ark. 585, - - S.W.3d - - (2006)). "The type of conduct that meets the standard for outrage must be determined on a case-by-case basis." *Id*. (citing *Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000). "Our court gives a narrow view to the tort of outrage and requires clear-cut proof to establish the elements in outrage cases." *Id.* "Merely describing the conduct as outrageous does not make it so." *Id.*

Plaintiffs assert that evidence exists to show that the Defendant failed to adequately investigate the cause of the fire at the Brawners' residence an acted with almost single-minded determination to deny their claim. Plaintiffs cite *Cincinnati Life Ins. Co. v. Mickles*, 85 Ark. App. 188, 199, 148 S.W.3d 768, 775-76 (2004), in support of their argument. In *Mickles*, the Arkansas Court of Appeals upheld the jury's finding that the defendant's conduct was outrageous, stating that "[t]he evidence show[ed] a willful ignorance of the facts coupled with a grim determination to deny coverage on two grounds that were in fact created by [the defendant] or its agent." *Id*. at 200, 148 S.W.3d at 777. However, in that case, the defendants attempted to deny coverage based upon two misrepresentations on the plaintiff's application, but the application was altered by one of the defendants, and the likelihood of illicit alteration should have been apparent. *Id*., 148 S.W.3d at 776. The facts in this case are not analogous.

Although it is for the jury to decide whether the Defendant's determination was correct, the record demonstrates that Defendant promptly conducted a thorough investigation and had a

reasonable basis for denying coverage.  Under these circumstances, the Court cannot say that Defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community.  Furthermore, Plaintiffs have not submitted any evidence of emotional distress so severe that no reasonable person could be expected to endure it.  Therefore, summary judgment is appropriate as to Plaintiffs' outrage claim.

  **E.**  **Misrepresentation**

Defendant argues that Plaintiffs' misrepresentation claim is nothing more than a restatement of Plaintiffs' breach of contract claim.  The Court notes that in their brief, Plaintiffs do not list misrepresentation as a separate cause of action, and the Court does not read the complaint as containing said cause of action.  Rather, Plaintiffs rely upon Defendant's alleged misrepresentations to support their bad faith claim.  However, if the Court were to find that Plaintiffs have alleged a separate cause of action for misrepresentation, Plaintiffs' claim would fail.

To succeed on a claim for misrepresentation, Plaintiffs must prove: (1) a false, material misrepresentation of fact by the Defendant; (2) knowledge by the Defendant that the representation was false; (3) an intention by the Defendant that the Plaintiffs act in reliance upon the representation; (4) justifiable reliance by the Plaintiffs on the representation; and (5) damage to the Plaintiffs resulting from such reliance.  *McWilliams v. Zedlitz*, 294 Ark. 336, 338, 742 S.W.2d 929, 930 (1988).  Here, Plaintiffs cannot establish that they justifiably relied upon the alleged misrepresentation that the Plaintiffs were responsible for the fire because Plaintiffs do not assert that they, at any time, believed the allegedly false representation.  Nor do Plaintiffs

assert that they acted on any such belief to their detriment. Rather, Plaintiffs have disputed the representation.

  **F. Negligence**

Defendant argues that Plaintiffs' negligence claim is nothing more than a restatement of Plaintiffs' breach of contract claim. Plaintiffs state that Defendant negligently breached the contract. Plaintiffs further state that a contractual relationship existed between the parties, the Defendant had a duty to use ordinary care under the circumstances to fulfill its obligations under that contract, and Defendant breached its duty of care, which proximately caused damage to the Plaintiffs. Plaintiffs have pointed to no duty owed by Defendant outside of the contract. Clearly, Plaintiffs' claim sounds in contract. Additionally, as stated above, the record demonstrates that Defendant promptly conducted a thorough investigation and had a reasonable basis for denying coverage. Therefore, summary judgment is appropriate as to Plaintiffs' negligence claim. Only Plaintiffs' breach of contract claim will proceed to trial.

**IV. Plaintiffs' Second Motion for Partial Summary Judgment (Docket No. 79)**

Plaintiffs state that as defenses against the Brawners' claims in this matter, Defendant maintains that it properly denied their claim because the Brawners intentionally set their house on fire, made misrepresentations that voided their policy, and the sworn statement and proof of loss submitted by the Brawners was fraudulent. Plaintiffs move for summary judgment as to these defenses and request that Defendant should be precluded from asserting said defenses.

As stated in *Haynes v. Farm Bureau Mut. Ins. Co. of Arkansas, Inc,*. 11 Ark .App. 289, 292, 669 S.W.2d 511, 513 (1984):

> There are ordinarily no eye witnesses to an act of arson because the deliberate burning of an insured building by its owner is usually accomplished alone and in secret. Any material fact in issue, however, may be established by circumstantial evidence even though the testimony of other witnesses may be undisputed. The fact that evidence is circumstantial does not render it insubstantial as our law makes no distinction between direct evidence of a fact and circumstances from which it might be inferred. The circumstances may be such that different minds can reasonably draw different conclusions from them without resort to speculation. Where there are facts and circumstances in evidence from which reasonable minds might reach different conclusions without resort to speculation the matter is an issue of fact which must be submitted to the jury for its determination.

As noted above, the Court has previously concluded that "Defendants have submitted sufficient evidence to show that there is a genuine issue as to the material facts regarding whether Plaintiffs, or one of them, intentionally set the fire or caused it to be set, and as to whether the Plaintiffs, or one of them, intentionally concealed and/or misrepresented material facts relating to the fire and to their claim submitted to Defendant." Therefore, summary judgment is denied.

**V.     Plaintiffs' Third Motion for Summary Judgment (Docket No. 82)**

Plaintiffs move for summary judgment on the fact that the fire loss at issue was a total loss, and therefore, Plaintiffs are entitled to recover the full amount of the coverage of $171,278.00. Defendant admits that the loss by fire at 10 Dakota Drive, Conway, Arkansas, was a total loss, and that, under the valued policy statute in Arkansas, that Plaintiffs will be entitled to recover the full amount of the coverage of $171,278.00 if they prevail on their breach of contract claim. See Ark. Code Ann. § 23-88-101. As stated above, the question of whether Plaintiffs should prevail on their breach of contract claim is one for the jury. However, the Court finds that in the event Plaintiffs do prevail on their breach of contract claim, they will be entitled to recover the amount of $171,278.00 on the home.

Plaintiffs also assert that they are entitled to summary judgment on the total amount of the personal property protection in the sum of $128,459.00, the total amount of the personal property protection under the terms of the policy. Plaintiffs state that Defendant has admitted that it does not have anyone who will dispute the testimony of Diane Holloway, an expert witness, that the contents replacement cost was the total amount of $205,131.00.

Defendant asserts that, as part of their claim, the Plaintiffs have the burden of proof to establish to the jury both the fact that the contents existed in the home at the time of the loss, and the value of those contents. Defendants further assert hat the testimony put forward by Ms. Holloway, who has never had a conversation with either of the Brawners concerning the contents in the home, contradicts the sworn statement and proof of loss submitted by the Plaintiffs to the Defendant. The Court agrees that genuine issues of material fact exist with respect to the personal property allegedly owned by the Plaintiffs, and in the property at 10 Dakota Drive, at the time of the fire. Therefore, summary judgment is granted in part, and denied in part.

**VI.   Plaintiffs' Motion in Limine (Docket No. 86)**

Plaintiffs move to exclude Bates stamped documents 2-1470 through 2-1580, which comprise the file of the Arkansas Insurance Department where it investigated a Complaint brought by the Brawners against Defendant. It appears to be Defendant's position that if Plaintiff's claims for bad faith or negligence are allowed to be considered by the jury, Defendant would seek to introduce some of the documents at issue. Otherwise, Defendant has no intention of introducing said documents. As stated above, only Plaintiffs' breach of contract claim survives, and therefore, Plaintiffs' motion is granted.

**VII.     Plaintiffs' Motion in Limine; Motion for Sanctions as to Allstate Indemnity Company (Docket No. 87)**

Plaintiffs move the Court to exclude any and all evidence revealed in the letter of November 8, 2007, from being considered by the Defendant in this trial because of the fact that the documents could have, and should have, been produced in Defendant's initial disclosures, and at least prior to the discovery cut-off, which was prior to the deposition of Karen McClune Bierman. Plaintiffs also request that the Court impose sanctions upon Defendant Allstate.

Defendant submits the affidavit of Holly Goodwin, a Staff Claim Service Adjuster for Allstate Indemnity Company and Allstate Insurance Company. She states that on October 1, 2007, she met with defense counsel to prepare for her deposition. During that preparation, Ms. Goodwin learned that the information provided to defense counsel did not include the photographs and original notes taken by her co-worker at the time of the loss, Karen McClune. She states that she immediately inquired through several Allstate contacts of the location or disposition of the photographs and notes taken at the time she and Ms. McClune visited the property at 10 Dakota Drive, Conway, Arkansas on May 23, 2006. She states that several of the photographs she took were located quickly and immediately disclosed to Plaintiffs' counsel.

She further states that the photographs and original notes taken by Ms. McClune were located in materials stored in the Metairie, Louisiana Allstate office, which were packaged to transfer to the Nashville office due to the closing of the Metairie office. Ms. Goodwin states that the materials delivered to her from the Metairie office are consistent with Ms. McClune's deposition testimony and the claim notes she contemporaneously recorded on the Allstate Claim log. She also states that she provided the materials to defense counsel as quickly as she received

them from the Metairie office, and she understands that defense counsel immediately disclosed them to Plaintiffs' counsel.

Defendant acknowledges that the information Plaintiff refers to should have been disclosed along with the initial disclosures, and that defense counsel's letter of November 8, 2007, explained to Plaintiffs' counsel the circumstances of how the items were presented to defense counsel and why they were belatedly disclosed. Plaintiffs' counsel acknowledges that defense counsel offered to produce Ms. McClune for a second deposition, but states that this additional expense ought not be sustained by the Plaintiffs. Defense counsel responds by stating that Defendant will pay the costs and expenses of this deposition.

Defendant asserts that Plaintiffs do not set out in their motion any prejudice to the late disclosure of these items. Defendant further asserts that the Bates stamped document numbers 2-1383 through 2-1437 were prepared by the Plaintiffs and part of the Plaintiffs' initial disclosures. Additionally, the documents Bates stamped document numbers 2-1438 through 2-1469 are nothing more than blank forms. Therefore, Defendant asserts that only Bates stamped document numbers 2-1358 through 2-1382 are the only items that are the subject of this motion that had not been previously disclosed.

Even then, Defendant states that it disclosed Bates stamped document 2-1359, with the exception of personal notes taken by Ms. McClune, and those personal notes were testified to by Ms. McClune during her deposition. Defendant also states that it had previously disclosed Bates stamped document number 2-1350, leaving only the photographs taken by Ms. McClune that she acknowledged in her deposition, and an e-mail dated July 19, 2006, requesting a clerk to enter the information provided by the Plaintiffs related to the contents allegedly lost in the fire into Allstate's cost estimating system. Defendant states that Plaintiffs have had the results of input of

the items to the Allstate cost estimating system and the name of the clerk who entered the items for several months. Defendant further states that Plaintiffs were not prejudiced by not having Ms. McClune's photographs because they had the opportunity to photograph the fire loss at the same time, and all of the photographs taken by Richard West were timely disclosed.

The Court finds that Plaintiffs were not prejudiced by the untimely disclosure of these documents. Therefore, the Court declines to exclude these documents. The Court also declines to impose sanctions on Defendant Allstate. Plaintiffs' motion is denied.

Accordingly,

IT IS THEREFORE ORDERED that Defendant's Motion for Partial Summary Judgment (Docket No.74) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Second Motion for Partial Summary Judgment (Docket No. 79) be, and it is hereby, DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Third Motion for Summary Judgment (Docket No. 82) be, and it is hereby, GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Plaintiffs' Motion in Limine (Docket No. 86) be, and it is hereby, GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion in Limine; Motion for Sanctions as to Allstate Indemnity Company (Docket No. 87) be, and it is hereby, DENIED.

IT IS SO ORDERED this 10th day of December, 2007.

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE