UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JOHN BRAWNER and
RENEA BRAWNER                                                              PLAINTIFFS

v.                             CASE NO. 4:07-CV-00482 GTE

ALLSTATE INDEMNITY COMPANY                                                  DEFENDANT

**ORDER**

Presently before the Court are Plaintiffs' Motions in Limine (Docket Nos. 111 and 112), Plaintiffs Objections to the Statement of the Case, and a Trial Brief by Plaintiffs. The Court notes that Defendant has only had the opportunity to respond to Plaintiffs' Motion in Limine (Docket No. 119). Therefore, if Defendant takes issue with any of the Court's rulings on said issues, it may address them to the Court prior to trial at which time the Court may reconsider its rulings.

**I.      Plaintiffs' Motion in Limine (Docket No. 119)**

Plaintiffs move this Court to exclude the testimony regarding the amount of child support that Mr. Brawner paid for his four children as prejudicial. The Court has already ruled that the amount of child support owed by Mr. Brawner and past due at the time of the fire is relevant. The Court agrees with Defendant that Mr. Brawner's financial obligations regarding child support are relevant. Plaintiff's request is denied.

Plaintiffs also request that the Court exclude the fact that the Brawners previously consulted with and employed another attorney. Defendant states that it has no intention of revealing the consultation and employment of Gail Matthews unless Plaintiffs open the door to such testimony. Plaintiff's objection to such evidence is sustained.

1

Further, while acknowledging that the Court has ruled that Plaintiffs cannot disclose that they have not been arrested or charged with any criminal violation in connection with the burning of their home, Plaintiffs request that the Court allow Plaintiffs to communicate to the jury that they have never been arrested for any criminal offense.  Plaintiffs suggest that "[p]erhaps the Court and counsel can figure out some way to allow them to communicate that they have never had any criminal convictions on anything without suggesting that they were not charged with an arson arising from this fire."

Defendant states that Plaintiffs' attorney is attempting to improperly contravene this Court's order (Docket No. 118) regarding criminal offenses.  Furthermore, Defendant states that under Federal Rules of Evidence 403, 404, and 405, any attempt to establish good character through lack of criminal record is prejudicial as to the Defendant.  The Court agrees finding that unless the Defendant raises issues about the prior criminal record of the Plaintiffs, the absence of such record should be inadmissible, particularly because it would undermine the rule that Plaintiffs should not disclose that they have not been charged or convicted of the arson of their home.

Finally, Plaintiffs request that the testimony that Jon Brawner moved in with Renea Brawner prior to their marriage be excluded.  Defendant states that it does not intend to submit such testimony.  Plaintiffs' objection is sustained.

## II.     Plaintiffs' Motion in Limine (Docket No. 121)

Plaintiffs, once again, ask this Court to find that under Arkansas law, the following alleged misrepresentations will not support a valid defense of misrepresentation, and therefore should be excluded:  (1) that the Brawners stated that they were two months delinquent on their

2

mortgage, when they were actually seven months delinquent, (2) that the Brawners stated that they did not know about the foreclosure sale on May 22, 2007, (3) that the Brawners misrepresented the amount of the contents in the home, (4) that the Brawners misrepresented the cause of the fire, (5) that Jon Brawner misrepresented that he received a deferment from the mortgage company because he was selling the home to Mr. Eagle and/or Mr. King; and (6) that Jon Brawner misrepresented the sale to Mr. Eagle.  Plaintiffs specifically note that Allstate knew that Plaintiffs were in fact seven months delinquent on their mortgage prior to asking the Plaintiffs about it.  Plaintiffs cite to the questioning of Renea Brawner in her examination under oath in which Defendant's counsel asks Ms. Brawner if she knew that the house was in foreclosure and Plaintiffs were behind on their payments.  Plaintiffs also note that whether or not Eagle had the financial capacity to complete the deal on the home is irrelevant because the Brawners intended to go through with the transaction.  Plaintiffs further state that Allstate does not have any evidence to contradict Jon Brawner's assertion that he obtained a deferment from the mortgage company.

     "[A] fact or circumstance is material if 'it pertains to facts that are relevant to the company's rights to enable the company to decide upon its obligations and to protect itself against false claims.'" Willis v. State Farm Fire and Cas. Co., 219 F.3d 715, 718 (8th Cir. 2000). "A misrepresentation may thus be material even if it does 'not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time.'" *Id*.  "[T]he materiality of a statement is to be evaluated as of the time that the statement was made, not in light of the facts as they are later revealed to be." *Id*.

Previously, the Court ruled that it would not exclude the above-described evidence of misrepresentation and arson, but that Mr. Read may only testify regarding facts of which he has personal knowledge and may not be used as a summary witness. Until the Defendant puts on his case, the Court does not know precisely what evidence Defendant will rely upon to establish that Plaintiffs made material misrepresentations that would void the policy. Depending upon Defendant's proof, Plaintiffs may be able to show that Defendant has abandoned one or more of the above-described theories of misrepresentation. Plaintiffs may put on evidence, in any event, that their representations were in fact true, and thus, not misrepresentations. On the other hand, it is clear that at least some of the above-described misrepresentations, if true, would support Defendant's material misrepresentation defense. The Court will make no definitive ruling on this at this time. The Court notes that it may be more appropriate to raise these arguments as a basis for a directed verdict, or partial directed verdict.

### III.    Objections to Statement of the Case

The Court will also take this opportunity to address Plaintiffs' Objection to the Statement of the Case Proposed by the Court (Docket No. 120). Plaintiffs ask the Court to omit information that Regions Bank had a mortgage on the property. However, that fact will clearly come out in trial through the evidence. Furthermore, Regions Bank is listed as the mortgagee in the policy. The Court denies Plaintiffs' request.

Plaintiffs also ask that the Court utilize a clear and convincing standard, which has been adopted in a minority of jurisdictions, rather than a preponderance of the evidence standard with regard to Defendant's arson defense. The Court declines to do so. *See Burnett v. Lloyds of London*, 710 F.2d 488, 489 (8th Cir. 1983) ("[T]he insurer must prove by a preponderance of the

evidence that the insured burned his property or conspired with others to have it burned.") (citing *MFA Mut. Ins. Co. v. Pearrow*, 245 Ark. 795, 434 S.W.2d 269 (1969)).

Additionally, Plaintiffs object to the portion of the Statement of the Case that states, "[t]hat one or both of the Plaintiffs concealed or misrepresented to the Defendant . . . ." Plaintiffs contend that the language in the policy that seeks to impute conduct of an insured to the other insured and therefore defeat the innocent spouse doctrine is objectionable and should not be utilized in this case.  Plaintiffs also state that the language does not include both arson and misrepresentation.

The Arkansas Supreme Court has stated that "the intent to exclude coverage in an insurance policy should be expressed in clear and unambiguous language, and an insurance policy, having been drafted by the insurer without consultation with the insured, is to be interpreted and construed liberally in favor of the insured and strictly against the insurer." *Noland v. Farmers Ins. Co., Inc*., 892 Ark. 449, 451, 892 S.W.2d 271, 272 (1995).  "It is also a longstanding rule that, where the terms of the policy are clear and unambiguous, the policy language controls; and absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms." *Id*. at 452.  "[W]hether an innocent coinsured, regardless of the relationship, is able to recover under an insurance policy is dependent upon the language of the policy." *Id*.  In *Noland*, the Court held that the following language precluded a coinsured from recovering under the policy: "If any insured directly causes or arranges for a loss of covered property in order to obtain insurance benefits, this policy is void.  We will not pay you or any other insured for this loss." *Id.*, 892 S.W.2d at 273.

The pertinent policy language at issue in this case is as follows:

> We do not cover any loss or occurrence in which *any insured person* has concealed or misrepresented any material fact or circumstance.
>
> . . .
>
> We do not cover loss to the property described in Coverage A – Dwelling Protection or Coverage B – Other Structures Protection consisting of or caused by:
>
>> . . .
>>
>> Intentional or criminal acts of or at the direction of *any insured person*, if the loss that occurs:
>>
>> a) may be reasonably expected to result from such acts; or
>>
>> b) is the intended result of such acts.
>>
>> This exclusion applies regardless of whether or not the insured person is actually charged with or convicted of a crime.
>
> . . .
>
> We do not cover loss to the property described in Coverage C – Personal Property Protection caused by or consisting of:
>
>> . . .
>>
>> Intentional or criminal acts of or at the direction of *any insured person*, if the loss that occurs:
>>
>> a) may be reasonably expected to result from such acts; or
>>
>> b) is the intended result of such acts.
>>
>> This exclusion applies regardless of whether or not the insured person is actually charged with or convicted of a crime.

The Court notes the use of the language "any insured person." Clearly, this language excludes coverage for the loss based upon the misrepresentation or intentional or criminal acts or "any insured person." Therefore, even if the Plaintiffs intended to pursue the innocent spouse theory,[1] the Court finds that both Plaintiffs would be precluded from receiving any benefit under the clear terms of the policy if Defendant proves one or both of its affirmative defenses against either of them. Therefore, Plaintiffs' objections are overruled.

---

[1] The Court notes that if Plaintiffs were to use this theory, it might, arguably, be improper for them to be represented by the same attorney.

## IV.   Testimony of John Youngblood

The Court notes that in a "Trial Brief" submitted by Plaintiffs, Plaintiffs anticipate that Defendant may take issue with certain testimony of their insurance industry expert, John Youngblood. Plaintiffs bring to the Court's attention an opinion by the Honorable Rodney Webb in the case of *Tweedle v. State Farm Fire and Cas. Co.*, Case No. 4:04-cv-608. There, in the context of Defendant's Motion for a New Trial, Judge Webb held that Mr. Youngblood's testimony was both relevant and reliable. Mr. Youngblood testified about the different types of arson investigations and the proper insurance industry standards, specifically criticizing the defendant insurance company for conducting a "negative investigation," rather than a "positive investigation." There, as in this case,[2] bad faith and negligence were not a part of the plaintiff's claim.

The Court is generally of the opinion that Mr. Youngblood's testimony as to the propriety of the investigation by Defendant is irrelevant, as the Court has dismissed the bad faith and negligence claims against Defendant. Furthermore, it is for the Court and the jury to determine whether the alleged misrepresentations of Plaintiffs were material, and were, in fact, made. Thus, the Court is inclined to exclude such testimony, but will address this issue again upon further argument by the parties. Independently, the Court suggests possible *Daubert* problems in connection with Mr. Youngblood's testimony.

Accordingly,

---

[2]The Court previously granted summary judgment in favor of Defendant on several of Plaintiffs' claims, including bad faith and negligence.

IT IS THEREFORE ORDERED that Plaintiffs' Motion in Limine (Docket Nos. 119) be, and it is hereby, GRANTED in part, and DENIED in part.

IT IS FURTHER ORDERED that Plaintiffs' Motion in Limine (Docket Nos. 121) be, and it is hereby, DENIED without prejudice.

IT IS FURTHER ORDERED that Plaintiff's Objections to the Statement of the Case Proposed by the Court (Docket No. 120) be, and they are hereby, OVERRULED.

IT IS SO ORDERED this 11th day of January, 2008.

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE