# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**JON BRAWNER and**
**RENEA BRAWNER**                                                                        **PLAINTIFFS**

**v.**                                   **CASE NO. 4:07-CV-00482 GTE**

**ALLSTATE INDEMNITY COMPANY**                                              **DEFENDANT**

## ORDER

Presently before the Court are Plaintiffs' Motions in Limine (Docket Nos. 167 and 178).

**I.      Background**

Allstate Indemnity Company ("Allstate") issued insurance policy number 921028867 to Jonathan and Renea Brawner, insuring real and personal property located at 10 Dakota Drive, Conway, Arkansas. On May 18, 2006, Plaintiffs' residence was destroyed by fire. Allstate, by and through its employee, Sandra Hendrick, investigated the fire loss. On November 15, 2006, Allstate advised the Brawners that it would deny payment on the claim because: "(1) The policy of insurance is void as a result of willful concealment and misrepresentation of material facts regarding the cause and origin of the fire, among other things, and for false swearing in the Proof of Loss and examination under oath relating thereto[;] (2) The fire is of an incendiary origin for which you or someone on your behalf is responsible[;] (3) The Proof of Loss which you have filed is fraudulent in that you falsely stated that the cause and origin of the fire, although you have knowledge of the true cause and origin of the fire[;] (4) The amount of your claim grossly exceeds any loss you may have actually sustained[;] (5) Finally, Allstate Insurance Company is exercising its right to cancel your policy."

On May 4, 2007, Plaintiffs filed their Complaint alleging breach of the implied covenant of good faith and fair dealing, slander, breach of the insurance contract, outrage, bad faith, and negligence. The Court denied Plaintiff's initial motion for summary judgment on October 12, 2007. On December 10, 2007, the Court granted summary judgment in favor of Defendant as to each of Plaintiff's claims, except for breach of the insurance contract, and denied Plaintiff's motion for summary judgment as to Allstate's defenses. The Court also found that in the event Plaintiffs prevail on their breach of contract claim, they will be entitled to recover the amount of $171,278.00 on the home, but denied summary judgment as to the total amount of the personal property protection.

The case proceeded to trial. Allstate relied upon the affirmative defenses of arson and misrepresentation. On January 18, 2008, the jury returned a verdict for Plaintiffs as to the arson issue and for Defendant as to the misrepresentation issue. On March 31, 2008, the Court denied Plaintiff's Renewal of their Motion for Judgment as a Matter of Law, or Motion for Directed Verdict, and Motion for Judgment Notwithstanding the Verdict, but granted Plaintiffs' Motion for a New Trial a new trial as to the misrepresentation issue.

On May 21, 2008, the Court granted summary judgment as to the alleged misrepresentations regarding the amount of the contents in the home at the time of the fire and the Brawners' alleged misrepresentations as to the cause of the fire. The Court noted that there remained genuine issues of material facts as to the following alleged misrepresentations: (1) the extent of the deficiency on the Brawners' mortgage; (2) the Brawners' knowledge of the foreclosure sale; (3) the sale of the home; and (4) the deferment from the mortgage company.

## II.     Motion in Limine (Docket No. 167)

Plaintiffs request that the Court exclude certain evidence and to instruct counsel to refrain from certain actions and making certain comments at the trial of this matter.

### A.     Ben Eagle

Plaintiffs request that the Court instruct counsel for Allstate to refrain from referring to Ben Eagle as "this Ben Eagle character." In response, Allstate states that if defense counsel referred to Ben Eagle as a "character" it must have been during closing arguments of the case indicating that Ben Eagle was one of the several characters involved in the set of circumstances leading to the Plaintiffs' cause of action and eventual trial of the lawsuit. Counsel is instructed to refrain from referring to Ben Eagle as "this Ben Eagle character."

### B.     Child Custody & Documents Not in Evidence

Second, Plaintiffs request that the Court instruct counsel for Allstate to refrain from holding up any documents before the jury that have not been admitted into evidence, and specifically, the pleadings filed in the custody proceedings regarding Mr. Brawners' children. Also, Plaintiffs assert that the custody dispute, child support, arrearages, and any and all issues dealing with the alleged failure of Jon Brawner to pay child support are inadmissible and should be excluded. Further, Plaintiffs seek to exclude any reference to Mr. Brawner's "limited visitation rights," the enforcement (or lack thereof) of the custody orders, whether Mr. Brawner attempted to gain custody of his children, the fact that Mr. Brawner's children are currently with Minnie Brawner, and whether certain witnesses testified for Mr. Brawner in his custody proceedings.

In response, Defendant states that the referenced pleadings were a certified copy from the Faulkner County Court identified by several witnesses in the first trial, and that Plaintiffs made said pleadings relevant by making the Plaintiffs' divorces and Mr. Brawner's custody dispute relevant.  Defendant further states that if Plaintiffs choose not to raise issues concerning each of their respective divorces, the custody dispute, and their character in the re-trial of this case, the issues involving the divorces and custody dispute may not be relevant.  Defendants state that they retain the right to cross-examine the Plaintiffs on items they make relevant in their direct testimony, or through the arguments of their counsel.  However, Defendants contend that the child support arrearages and "all issues dealing with the alleged failure of Jon Brawner to pay child support" are admissible because they relate to the Plaintiffs' financial condition at the time of the loss.

The Court agrees that the attorneys should make no reference to or "wave" any documents before the jury that have not been admitted into evidence.  Previously, the Court excluded inquiry into Mr. Brawner's relationship with his children, but allowed inquiry into the child support owed by Mr. Brawner at the time of the fire because Plaintiffs' financial condition at the time of the fire was probative of a possible motive for Plaintiffs to cause the fire. Although the issue of arson is no longer before the Court, and the Court has instructed Allstate that it may not suggest or attempt to prove that Plaintiffs were responsible for the fire, the Court finds that certain aspects of Plaintiffs' financial condition may be relevant to demonstrate the Brawners' knowledge of the extent of the deficiency on the mortgage or to support the need to pursue an arson investigation.  For instance, Allstate may wish to prove the extent of the Brawners' indebtedness to show that the Brawners must have known of the full extent of the

mortgage deficiency based upon the extent of their indebtedness in general. Therefore, the Court will allow limited inquiry into the extent of the child support arrearages. The Court notes that further inquiry into the issues surrounding child support and the Brawners' previous marriages is inappropriate, but cautions that Plaintiffs may by their own actions and comments at trial open the door to further inquiry into such subjects.

Additionally, the Court directs that there shall be no reference to Mr. Brawner's "limited visitation rights," the enforcement (or lack thereof) of the custody orders, whether Mr. Brawner attempted to gain custody of his children, the fact that Mr. Brawner's children are currently with Minnie Brawner, and whether certain witnesses testified for Mr. Brawner in his custody proceedings. However, the Court cautions Plaintiffs that certain testimony, such as extensive character testimony, may "open the door," and result in the admission of such evidence.

### C. Plaintiffs' Transcribed Statements

Plaintiffs assert that Plaintiffs' transcribed statements should be excluded because Allstate failed to provide the transcription as ordered by the Court, and has still only provided a redacted version of the transcript. In response, Defendant states that it provided the tape recordings of the Plaintiffs' statements on October 5, 2007. Defendant further states that certain portions of the statements are missing because the tape was inaudible. Defendant state that it will produce a second copy of each tape of the recorded statement, will have the tapes transcribed a second time, and will instruct the transcriptionist to forward a copy of the transcript directly to the Plaintiffs' counsel. The Court finds that this course of action will suffice. The Court declines to exclude Plaintiffs' transcribed statements at this time.

### D. Plaintiffs' Marriages & Divorces

Plaintiffs request that references to the date of the divorces of the Plaintiffs, the date Plaintiffs' married, any reference to the multiple marriages of Mr. and Mrs. Brawner, reference to Mr. Hawkins' failure to attend Plaintiffs' wedding, reference to Plaintiffs' out of state marriage, and reference to the fact that Plaintiffs' wedding bands were purchased in Las Vegas should be excluded. Plaintiffs also seek to exclude any mention of the property settlement between Jon and Minnie Brawner.

Defendant asserts that Plaintiffs made their respective divorces and character relevant at the first trial, and in so doing, subjected themselves to cross-examination on the issues. Defendant also asserts that the circumstances of the purchase of the wedding bands were relevant with respect to the value of the bands, as Plaintiffs claim these items as property lost in the fire. Defendant further asserts that the property settlement from the divorce was relevant with respect to the property the Plaintiffs owned at the time of the loss.

The Court finds that the date of the divorces of the Plaintiffs, the date of Plaintiffs' marriage to one another, reference to Mr. Hawkins' failure to attend Plaintiffs' wedding, reference to Plaintiffs' out of state marriage, and reference to the fact that Plaintiffs' wedding bands were purchased in Las Vegas do not appear to be relevant to the remaining issues and should be excluded. However, with regard to reference to the multiple marriages of Mr. and Mrs. Brawner, the Court notes that the fact that Mrs. Brawner has previously been married may come up in passing when discussing the notices of foreclosure sent to her ex-husband's address, but counsel are directed to limit references to previous marriages to the fullest extent possible.

Additionally, the property settlement is no longer relevant, as the Court has granted summary judgment as to the contents of the home.

### E. Admonishment Not to Violate Pre-Trial Orders

Plaintiffs request that the Court admonish Allstate's attorneys not to violate any pre-trial Orders during the second trial. In response, counsel for the Defendant state that they will abide by the Orders of the Court. Of course, counsel for both parties are expected to abide by any previous rulings of the Court. However, if counsel for either party believes that previously excluded evidence has been made relevant, *i.e.* by "opening the door" or otherwise, counsel are instructed to side-bar the Court prior to making any reference to such evidence. Failure to abide by the Court's directions may result in sanctions.

### F. Character Witnesses

Plaintiffs request that the Court prohibit the attorneys from making arguments that do not have any foundation. Plaintiffs assert that counsel for Allstate accused character witnesses for Mr. and Mrs. Brawner of not knowing them. Specifically, Plaintiffs state that counsel for Allstate "quoted Billy Jack Leach as saying he did not know" the Brawners or "did not know where they lived, which was a total misrepresentation to the jury" that the Brawners "did not have anyone to use as character witnesses and questioned the honesty of these individuals under these circumstances." In its response, Allstate states that it reserves the right to cross-examine character witnesses on any issue made relevant by the fact that such witnesses are being called as character witnesses, and for no other purpose.

Of course, the Court agrees that the attorneys should refrain from making arguments that do not have any foundation. However, if the Brawners choose to call character witnesses,

Allstate is free to question said witnesses about how well they know the Brawners and the facts and circumstances of the relationship between the Brawners and their character witnesses.

### G.     Suggestion of an Affair

Plaintiffs assert that counsel for Allstate suggested that Jon Brawner was having an affair with Renea Brawner prior to Mr. Brawner's divorce from Minnie Brawner and implied that Renea Brawner was the in-home speech therapist for Jon Brawner's children. Plaintiffs contend that Renea Brawner provide the children's therapy to them at their school, or at Minnie Brawner's work place and that she had been the children's therapist in the past, not during the time of the separation, divorce, or remarriage.

Defendant contends that Plaintiffs chose to make each of their respective divorces relevant, and thus, the information was relevant. Additionally, Defendant states that there was no evidence that the therapy was provided at the children's school or at Minnie Brawner's work place.

Because the divorces of Plaintiffs are no longer relevant, any suggestion that Jon and Renea Brawner were having an affair is excluded. Any evidence about where Mrs. Brawner conducted speech therapy for Mr. Brawner's children is also excluded. However, the Court cautions Plaintiffs that certain testimony, such as extensive character testimony, may "open the door," and result in the admission of such evidence.

### H.     Multiple Jobs of Jon Brawner

Plaintiffs assert that counsel for Allstate made the fact that Mr. Brawner had multiple jobs "sound negative," when in fact all of Mr. Brawner's jobs have been good jobs with

prestigious companies. Plaintiffs also assert that the First Security documents indicate that Mr. Brawner had a draw each month from his current employer, but counsel for Allstate suggested otherwise. Plaintiffs seek to exclude any and all information about Mr. Brawner's job history and income (or lack thereof) as irrelevant. Defendant asserts that the Plaintiffs' financial condition and work history are relevant.

As stated above, although the issue of arson is no longer before the Court, and the Court has instructed Allstate that it may not suggest or attempt to prove that Plaintiffs were responsible for the fire, the Court finds that certain aspects of Plaintiffs' financial condition may be relevant as pointed out above. For instance, Allstate may wish to prove the extent of the Brawners' indebtedness and their lack of income to show that the Brawners must have known of the full extent of the mortgage deficiency based upon the extent of their indebtedness in general.

### I.     Financial Condition of the Brawners

Plaintiffs state that counsel for Allstate questioned Barbara Johnson, a character witness for the Brawners, as to her awareness of the Brawners' financial situation at the time of the fire. Plaintiffs seek to exclude any such testimony because the arson defense is no longer at issue. Plaintiffs also seek to exclude any and all evidence related to their financial condition at the time of the fire, including, their tax returns and any evidence from Regions Mortgage, or any other mortgage company, as irrelevant.

Defendant asserts that the Plaintiffs' financial condition at the time of the fire is relevant, as well as their misrepresentations concerning their financial condition.

As stated above, certain aspects of Plaintiffs' financial condition may be relevant. For example, records from Regions Mortgage are likely relevant to the issue of the misrepresentation

regarding the extent of the mortgage deficiency. The tax records may be relevant, *i.e.* if Defendant wants to show the extent of Plaintiffs' income. Thus, the Court declines to blanketly exclude all evidence related to Plaintiffs' financial condition at the time of the fire.

### J. Improper Closing Arguments

Plaintiffs assert that counsel for Allstate misrepresented Mrs. Brawner's testimony regarding whether she searched for jewelry in the fire debris. In response, Defendant states that this argument is simply a personal attack on Defendant's counsel, and that he argued the evidence in closing argument as he recalled it.

Of course, counsel are expected to conform their arguments to the evidence presented at trial. However, it appears that the testimony of Mrs. Brawner will no longer be relevant, as the Court has granted summary judgment as to the contents of the home. If, at re-trial, counsel takes exception to a statement made by opposing counsel during the course of closing arguments on the basis that no evidence supports same, counsel may object at that time. Nevertheless, the Court reminds counsel that it is its practice to allow fairly broad leeway to the attorneys during their closing arguments.

### K. All Evidence from First Trial

It appears that Plaintiffs seek to exclude all exhibits submitted by Defendant at the first trial of this case. Defendant responds that such a request is untenable, and Plaintiffs should identify the grounds for exclusion of each item of evidence so that Defendant may appropriately respond. The Court agrees. Plaintiffs' request is denied.

**III.     Motion in Limine (Docket No. 178)**

Plaintiffs seek to exclude testimony by Gary Steele, the AT&T representative, and all of the AT&T cell phone records Bates Stamp Nos. 3-1 through 3-121, as irrelevant. In response, Defendant states that Plaintiffs' counsel does not object to the authenticity of the records or the affidavit of Gary Steele. Defendant asserts that the records are relevant to show that Plaintiffs intended to deceive and perpetrate a fraud on Allstate. Specifically, Defendant contends that the telephone records confirm that a telephone call was placed from Jon Brawner's cell phone to Crystal Fortier at the law office handling the foreclosure proceedings, and corroborates a conversation, which was detailed in an e-mail introduced at the first trial. The Court agrees that this evidence is relevant, and declines to exclude it. Plaintiffs' motion is denied.

The Court notes that it has scheduled a pre-trial telephone conference to be held on August 19, 2008, at 10:00 a.m. to address the questions and concerns of the parties.

Accordingly,

IT IS THEREFORE ORDERED that Plaintiffs' Motion in Limine (Docket No. 167) be, and it is hereby, GRANTED in part, and DENIED in part.

IT IS FURTHER ORDERED that Plaintiffs' Motion in Limine (Docket No. 178) be, and it is hereby, DENIED.

IT IS SO ORDERED this 30th day of July, 2008.

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE