UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JON BRAWNER and
RENEA BRAWNER                                                                    PLAINTIFFS

v.                              CASE NO. 4:07-CV-00482 GTE

ALLSTATE INDEMNITY COMPANY                                                       DEFENDANT

## ORDER

Presently before the Court are Plaintiffs' Motion in Limine (Docket No. 193), Plaintiffs' Motion in Limine (Docket No. 195), and Defendant's Motion in Limine (Docket No. 198).

**I.     PLAINTIFFS' MOTION IN LIMINE (Docket No. 193)[1]**

   **A.     Defendant's Exhibit 3**

Plaintiffs request that the document marked Bates stamp number 01-0295 be excluded because it has "never been produced in this case." Additionally, Plaintiffs assert that each of the non-waiver agreements and authorizations are irrelevant and should be excluded. Plaintiffs also assert that the language[2] printed on these documents is not consistent with Arkansas law and is unfairly prejudicial.

In response, Allstate contends that it previously disclosed document 01-0295. Allstate asserts that the non-waiver agreements are conditionally relevant based on the testimony of the

---

[1] The Court will address the admissibility of Exhibits 8(a), 8(c), 8(d), 14, and 15 in a subsequent Order.

[2] "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

1

Plaintiffs and any cross-examination of the Defendant's witnesses by Plaintiffs' counsel. However, Defendant states that prior to attempting to introduce these documents, counsel will identify the document to Plaintiffs' counsel to allow him the opportunity to object based on the testimony at trial.

The Court declines to grant Plaintiffs' motion at this time, as these documents may be relevant, depending upon the proof at trial. If Plaintiffs' counsel believes that these documents are inadmissible at the time Defendant's counsel seeks to introduce said documents, Plaintiffs' counsel may raise an appropriate objection at that time. However, the Court will require that Defendant redact the language set forth in Footnote 2.

    **B.**    **Defendant's Exhibits 4(a) - 4(g)**

Plaintiffs assert that Defendant's Exhibits 4(a) - 4(g) are irrelevant to the misrepresentation defense, and should be excluded. Plaintiffs specifically note that the language[3] printed on Defendant's Exhibits 4(f) and 4(g) (Advance Payment Agreements) is not consistent with Arkansas law and is unfairly prejudicial.

Defendant asserts that these documents are conditionally relevant based on the testimony at trial. However, Defendant states that prior to attempting to introduce these documents, counsel will identify the document to Plaintiffs' counsel to allow him the opportunity to object based on the testimony at trial.

---

[3] "ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON."

The Court declines to grant Plaintiffs' motion at this time, as these documents clearly may be relevant, depending upon the proof at trial and the stipulations of counsel. If Plaintiffs' counsel believes that these documents are inadmissible at the time Defendant's counsel seeks to introduce said documents, Plaintiffs' counsel may raise an appropriate objection at that time. However, the Court will require that Defendant redact the language set forth in Footnote 3 from Exhibits 4(c), 4(f), and 4(g).

### C.     Defendant's Exhibits 5, 6, and 7

Plaintiffs assert that Defendant's Exhibit 5 (Letter from Sandra Hendrick to Regions Bank Dated May 24, 2006), Defendant's Exhibit 6 (Letter from Sandra Hendrick to David Waldrop Dated September 12, 2006), and Defendant's Exhibit 7 (Email from Brenda Ganem at Holley, Waldrop to Sandra Hendrick dated October 20, 2006) have never been produced, and should be excluded. Plaintiffs also contend that the letters are hearsay because Sandra Hendrick, David Waldrop, and Brenda Ganem are not listed as witnesses and the documents cannot be authenticated.

In response, Defendant contends that these documents have been produced. Defendant sets forth the dates and supporting documentation of previous disclosure, and attaches the documents. With regard to the hearsay allegation, Defendant contends that these documents are not offered for the truth of the matter asserted, but to demonstrate the effect on the mind of the hearer. Additionally, Defendant contends that the documents were created by Allstate in the course of investigating Plaintiffs' claim, or obtained in response to requests from other entities as part of the investigation of the Plaintiffs' claim. Defendant states that these documents form

the basis of the denial and substantiate the misrepresentation by the Brawners. The Court declines to exclude these documents.

### D. Defendant's Exhibits 9, 10, 11, 12, and 13

Plaintiffs seek to exclude Defendant's Exhibits 9 (Payoff Statement), 10 (Payoff Check), 11 (Second Payoff Check), 12 (Revised Payoff Statement), and 13 (Notice of Denial to Regions). Plaintiffs assert that the documents are not relevant to the misrepresentation issues and that Exhibit 13 refers to arson as one of the reasons for a denial.

In response, Defendant states that it does not intend to introduce these documents before the jury, and that the documents are for the Court's benefit in the event that Plaintiffs prevail and a setoff must be determined. However, Defendant clarifies that these documents may become relevant based upon the testimony of Plaintiffs and cross-examination of any of Defendant's witnesses by Plaintiffs' counsel.

The Court is satisfied with Defendant's response, and anticipates that Defendant will submit these documents for the record, but not for the jury. If Defendant believes that these documents may properly be introduced to the jury, then prior to attempting to introduce such documents, Defendant's counsel will identify same to Plaintiffs' counsel and to the Court and will argue the admissibility thereof sidebar or otherwise outside the presence of the jury and obtain the Court's ruling thereon.

### E. Defendant's Exhibit 17

Plaintiffs request that the Court exclude Defendant's Exhibit 17 (Denial Letter Dated 11/15/06) because it refers to arson as a reason for the denial and is irrelevant. Defendant asserts

that this document is conditionally relevant based on the testimony at trial. However, Defendant states that prior to attempting to introduce this document, counsel will identify the document to Plaintiffs' counsel to allow him the opportunity to object based on the testimony at trial.

If Defendant believes that these documents may properly be introduced to the jury, then prior to attempting to introduce such documents, Defendant's counsel will identify same to Plaintiffs' counsel and to the Court and will argue the admissibility thereof sidebar or otherwise outside the presence of the jury and obtain the Court's ruling thereon.

### F.  Defendant's Exhibits 16, 18, and 20

Plaintiffs request that this Court exclude portions of Defendant's Exhibit 16, J. Benton Dyke's file, unless the documents are relevant to the material misrepresentation defense. Plaintiffs recognize that some documents may be relevant, and requests that the Court examine the documents to determine whether they are relevant. Similarly, Plaintiffs request that the Court require Defendant to limit Exhibit 18 (AT&T cellular telephone records) to those records referencing specific telephone calls and Exhibit 20 (IRS records for the Brawners) to the specific records to be introduced.

As Defendant notes, the Court has already ruled that Exhibit 18 is relevant and admissible. With regard to Exhibits 15 and 20, Defendant asserts that these documents are conditionally relevant based on the testimony at trial. However, Defendant states that prior to attempting to introduce these documents, counsel will identify the documents to Plaintiffs' counsel to allow him the opportunity to object based on the testimony at trial.

Plaintiffs have not established that the records are so voluminous as to be overly burdensome. The Court declines to examine each document submitted to determine whether the

document is, or may become, relevant. Plaintiffs' request is denied. Of course, the Court anticipates that only those portions of the documents that are relevant, or may become relevant during trial, will be introduced.

### G. Defendant's Exhibit 19 and 28

Plaintiffs seek to exclude Defendant's Exhibits 19 (Renea Brawner's W-2 for 2005) and 28 (Utility Bills for 10 Dakota Drive) as irrelevant.

With regard to Exhibit 19, Defendant asserts that this document is conditionally relevant based on the testimony at trial. However, Defendant states that prior to attempting to introduce this document, counsel will identify the document to Plaintiffs' counsel to allow him the opportunity to object based on the testimony at trial.

Defendant asserts that Exhibit 28 shows the Brawners' financial condition, which the Court has ruled is relevant. However, Defendant states that it does not intend to introduce Exhibit 28, unless Plaintiffs' testimony differs from their previous sworn testimony that their utilities had been unpaid for several weeks. The Court declines to exclude Exhibits 19 and 28 at this time.

### H. Defendant's Exhibit 21 and 22

Plaintiffs request that this Court exclude affidavits of arrearage on child support payments to Jacklyn Estrada and Minnie Brawner. Plaintiffs assert that the Court previously ruled that this is a limited issue and that the arrearage is not relevant. The Court notes that in its Order dated July 30, 2008, the Court stated that it would "allow limited inquiry into the extent of the child support arrearages." The Court also noted that "further inquiry into the issues

surrounding child support and the Brawners' previous marriages is inappropriate, but caution[ed] that Plaintiffs may by their own actions and comments at trial open the door to further inquiry into such subjects."

Defendant responds by stating that it only intends to use these exhibits for impeachment purposes if Mr. Brawner changes his testimony. Otherwise, the Defendant will likely be satisfied with Mr. Brawner's previous sworn testimony under oath and his answers to Interrogatories. The Court declines to exclude Exhibits 21 and 22 at this time, noting that it has not had the benefit of reviewing these documents.

### I.  Defendant's Exhibits 23, 24, 25, and 26

Plaintiffs seek to exclude Defendant's Exhibits 23 (Answers to Interrogatories provided by the Brawners), 24 (Transcript of Depositions of each witness called), 25 (Examination Under Oath of Renea Brawner), and 26 (Examination Under Oath of Jon Brawner), which Defendant has identified as "for impeachment." Plaintiffs assert that although Defendant may utilize these documents for impeachment purposes, the transcripts and documents themselves should not be introduced.

In response, Defendant states that it intends to use these documents for impeachment purposes in accordance with the Federal Rules of Civil Procedure. The Court agrees that these exhibits should not be introduced into evidence, but may, depending upon the circumstances, be used for impeachment purposes.

**J.     Defendant's Exhibit 30**

Plaintiffs object to Defendant's Exhibit 30, which states, "Defendant reserves the right to use all documents identified in discovery for impeachment, or if made relevant for other reasons at trial." Plaintiffs assert that Defendant should be required to specify which documents are referenced by this exhibit.

In response, Defendant states that it "will not use any document not previously identified as an exhibit at trial unless Defendant feels it is relevant based on the testimony as it is developed at trial and will identify the document to opposing counsel and approach the Court, if necessary, prior to attempting to introduce it into evidence. The Court is satisfied with this response. Plaintiffs' objection is overruled.

**II.     PLAINTIFFS' MOTION IN LIMINE (Docket No. 195)**[4]

**A.     Michael Young**

Plaintiffs assert that the Court exclude the testimony of Michael Young, Renea Brawner's ex-husband, because he cannot provide any information or testimony relevant to the issues in this case. Alternatively, Plaintiffs request that the Court require Defendant to proffer the testimony to be presented, outside the hearing of the jury, to determine the relevance of said testimony. Plaintiffs note that Defendant's counsel has not located Mr. Young, so this may be a moot issue.

In response, Defendant acknowledges that it is having difficulty locating Michael Young. Defendant states that it will not introduce any testimony from Michael Young in violation of the

---

[4] The Court will address the issues surrounding, Tonia Moore, Keith Smith, Veterans Administration Hearsay, and Richard West by separate Order.

Court's previous Orders, but is under no obligation to disclose the substance of the testimony of a lay witness. Thus, Defendant asserts that it would be improper to require Defendant to proffer Mr. Young's testimony prior to his testimony at trial. The Court agrees and is satisfied with Defendant's response.

### B.     Carolyn Reeves

Plaintiffs request that the Court exclude the testimony of Carolyn Reeves, First Security Bank, on the basis that she has no relevant or competent information on the issues of misrepresentation. Alternatively, Plaintiffs request that the Court require Defendant to proffer the testimony to be presented, outside the hearing of the jury, to determine the relevance of said testimony.

Defendant responds by noting that Ms. Reeves testified at the first trial of this matter, and there is no reason for an in-camera review of her testimony or any documents she will be authenticating. Defendant further states that if Plaintiffs would simply stipulate to the authenticity of their own bank records, Ms. Reeves' testimony would not be necessary.

Defendant's response is adequate. As discussed above, the Court declines to exclude the First Security Bank records from 9/15/04 to 9/15/06. Similarly, the Court declines to exclude Ms. Reeves' testimony and will not require a proffer of testimony out of the hearing of the jury.

### C.     Holly Goodwin, Richard Read, and Karen McClune

Plaintiffs seek to limit the testimony of Holly Goodwin, Richard Read, and Karen McClune, witnesses for Allstate, to testimony previously given in deposition and the first trial. In response, Defendant asserts that it is untenable to restrict a witness to testify only to the

matters previously inquired in their deposition, as Defendant had no control over the questions posed by Plaintiffs' counsel in the deposition.  Defendant states that these witnesses will testify as to the course and scope of Allstate's investigation based on the documents presented in their file and the direct actions taken by those individuals with respect to Plaintiffs' claim.  Plaintiffs' request is denied.

### D.     J. Benton Dyke

Plaintiffs seek to exclude the testimony of Attorney J. Benton Dyke, who handled the statutory foreclosure of the Brawners' home, as repetitious of the testimony of Crystal Fortier.  Plaintiffs also assert that he had no personal contact with Plaintiffs or other individuals with relevant information about the alleged misrepresentation.

In response, Defendant states that the fact that a witness was not called at the first trial is irrelevant and should not preclude the calling of a witness at the second trial.  Defendant further states that it does not intend to put forward repetitious testimony and may only call one of the two witnesses, Crystal Fortier or J. Benton Dyke.  Plaintiffs' request is denied.

### E.     Reservation of Rights

Plaintiffs object to Defendant's statement on its witness list that it "reserve[s] the right to call all witnesses identified in discovery for impeachment or if they become relevant for any other reason at trial."  In response, Defendant maintains that the Federal Rules of Civil Procedure allow Defendant to reserve the right to call any previously identified witness, or rebuttal witness, as necessary.  Plaintiffs' objection is overruled.

**F.      Testimony Regarding Moving, Motivation for Moving, and Storage Unit**

Plaintiffs seek to exclude testimony regarding the fact that Plaintiffs were moving furniture out of the house prior to the fire, that Plaintiffs rented a unit to store personal property and other items, and requests that the Court exclude statements by opposing counsel regarding the Brawners' motivation for moving. Plaintiffs assert that these topics relate to the arson defense and are therefore irrelevant.

As the Court has previously ruled, Allstate may not suggest or attempt to prove that Plaintiffs were responsible for the fire. However, the Court notes that it is inevitable that the fact that Plaintiffs were moving and the reason for the move will come out during trial, as one of the alleged misrepresentations regards the sale of the home and knowledge of the foreclosure. Thus, the Court declines to exclude all evidence surrounding the Plaintiffs' move. Of course, the Court does not anticipate the necessity of counsel going into detail regarding the various items removed, etc., as arson and the contents of the home are not longer at issue.

**G.      Opening Statements Concerning Witnesses Who Will Not Testify**

Plaintiffs assert that in Defendant's opening statement, counsel for Defendant discussed what Minnie Brawner would testify to, when, in fact, she never appeared as a witness. Plaintiffs request that the Court direct Allstate's counsel to refrain from discussing testimony or other evidence during opening statements if such testimony will not be introduced.

Defendant states that he does not intend to make any argument or put forward proof not reasonably relevant based on the Court's rulings, but states that this testimony is conditionally relevant, depending upon the proof at trial.

Opening statements are supposed to identify the issues and outline and summarize the evidence the attorney <u>expects</u> will come before the jury during the trial. Plaintiffs' objection is overruled.

### H.   Neighbors of the Brawners

Plaintiffs seek to exclude all discussion about disputes with neighbors and whether or not the neighbors had any information about the arson as irrelevant. Defendant responds by stating that it does not intend to make any argument or put forward any evidence that is not reasonably relevant based on the Court's rulings. However, Defendant states that these topics are conditionally relevant.

The Court agrees that, at this time, this testimony is not relevant. The Court directs that if Defendant believes these matters have been made relevant by testimony put forth at trial, counsel should request a bench conference to resolve the issue.

### I.   Custody, Visitation, Child Support Arrearages, and Other Indebtedness

Plaintiffs seek to exclude any discussion regarding the Brawners seeing their children, having visitation with their children, and Mr. Brawner's attempt to gain custody as irrelevant. Plaintiffs also seek to exclude discussion regarding Mr. Brawner's child support arrearages as irrelevant. Plaintiffs also seek to exclude evidence of Jon Brawner's failure to pay his student loan, the fact that the Brawners were behind in payments on vehicles, utility bills (including cut-offs), and other financial obligations.

Defendant states that the Court has already ruled that the Plaintiffs' financial condition is relevant, and so long as Mr. Brawner testifies truthfully with respect to his arrearages on child

support, Allstate does not intend to introduce the Affidavits of Arrearage.  Additionally, Defendant states that it does not intend to put forward any proof that is not reasonably relevant based on the Court's rulings.

The Court has already ruled on several of these issues.  In the Court's Order dated July 30, 2008, the Court stated:

> Although the issue of arson is no longer before the Court, and the Court has instructed Allstate that it may not suggest or attempt to prove that Plaintiffs were responsible for the fire, the Court finds that certain aspects of Plaintiffs' financial condition may be relevant to demonstrate the Brawners' knowledge of the extent of the deficiency on the mortgage or to support the need to pursue an arson investigation.  For instance, Allstate may wish to prove the extent of the Brawners' indebtedness to show that the Brawners must have known of the full extent of the mortgage deficiency based upon the extent of their indebtedness in general.  Therefore, the Court will allow limited inquiry into the extent of the child support arrearages.  The Court notes that further inquiry into the issues surrounding child support and the Brawners' previous marriages is inappropriate, but cautions that Plaintiffs may by their own actions and comments at trial open the door to further inquiry into such subjects.
>
> Additionally, the Court directs that there shall be no reference to Mr. Brawner's "limited visitation rights," the enforcement (or lack thereof) of the custody orders, whether Mr. Brawner attempted to gain custody of his children, the fact that Mr. Brawner's children are currently with Minnie Brawner, and whether certain witnesses testified for Mr. Brawner in his custody proceedings.  However, the Court cautions Plaintiffs that certain testimony, such as extensive character testimony, may "open the door," and result in the admission of such evidence.

The Court's rulings on these issues will stand.  As previously stated, Allstate may wish to prove the extent of the Brawners' indebtedness to show that the Brawners must have known of the full extent of the mortgage deficiency based upon the extent of their indebtedness in general.  Therefore, the Court declines to exclude inquiry into these areas.

**J.     Evidence of Income or Lack of Income and Taxes**

Plaintiffs request that this Court exclude evidence regarding income or lack of income, salary level of Mr. Brawner, and the W-2's and 1099's of Jon and Renea Brawner, including a W-2 from Edward Jones that has not been produced to Plaintiffs. Plaintiffs assert that the tax records cannot be established by any competent evidence and there will be no witness who can introduce and authenticate the Edward Jones W-2. Plaintiffs also seek to exclude reference to the Brawners' failure to pay taxes for 2004, 2005, and 2006.

In response, Defendant states that it is attempting to link the creation of the new storage unit and the allegations with respect to testimony of income, lack of income, and IRS records. Defendant states that the Court has ruled that Plaintiffs' financial condition is relevant to the extent that Plaintiffs do not testify truthfully to their income and their actions with respect to the IRS.

The Court has also already ruled on the issue of income and lack of income. In the Court's Order dated July 30, 2008, the Court stated:

> [T]he Court finds that certain aspects of Plaintiffs' financial condition may be relevant as pointed out above. For instance, Allstate may wish to prove the extent of the Brawners' indebtedness and their lack of income to show that the Brawners must have known of the full extent of the mortgage deficiency based upon the extent of their indebtedness in general.
> . . .
> The tax records may be relevant, *i.e.* if Defendant wants to show the extent of Plaintiffs' income. Thus, the Court declines to blanketly exclude all evidence related to Plaintiffs' financial condition at the time of the fire.

Furthermore, the Brawners' failure to pay taxes for 2004-2006 relates to the extent of their indebtedness, regardless of whether or not they filed for an extension. The Court declines to exclude such evidence.

### K.     Accounts of Renea Brawner

Plaintiffs seek to exclude questioning of Renea Brawner regarding what accounts she had before and after various marriages, what money she had and what happened to the money she received as irrelevant. Defendant responds by stating that if Renea Brawner will testify truthfully that she had absolutely no money at the time of the fire, and in the several months leading up to the fire, then her accounts before and after various marriages would not be relevant.

As the Court has previously ruled, Allstate may wish to prove the extent of the Brawners' indebtedness and their lack of income to show that the Brawners must have known of the full extent of the mortgage deficiency based upon the extent of their indebtedness in general. The Court will deny Plaintiffs' motion at this time. If necessary, the Court will deal with this issue at trial.

## III.    DEFENDANT'S MOTION IN LIMINE (Docket No. 198)[5]

### A.     John Tolliver

Defendant states that Plaintiffs disclosed John Tolliver as an alleged postal expert, but has yet to disclose any of the information required by Rule 26 with respect to Mr. Tolliver.

---

[5] The Court will address the deferment, tax extension, and arson issues raised by Defendant in a separate Order.

Defendant seeks to preclude Mr. Tolliver from testifying at trial. Plaintiffs state that Mr. Tolliver will not be a witness at trial for Plaintiffs. Defendant's request is granted.

### B.     John Youngblood

Defendant requests that the Court preclude John Youngblood from testifying at the trial of this case. Defendant references the Court's previous orders with respect to Mr. Youngblood.

In this Court's Order dated January 11, 2008, prior to the first trial, this Court stated:

> The Court notes that in a "Trial Brief" submitted by Plaintiffs, Plaintiffs anticipate that Defendant may take issue with certain testimony of their insurance industry expert, John Youngblood. Plaintiffs bring to the Court's attention an opinion by the Honorable Rodney Webb in the case of *Tweedle v. State Farm Fire and Cas. Co.*, Case No. 4:04-cv-608. There, in the context of Defendant's Motion for a New Trial, Judge Webb held that Mr. Youngblood's testimony was both relevant and reliable. Mr. Youngblood testified about the different types of arson investigations and the proper insurance industry standards, specifically criticizing the defendant insurance company for conducting a "negative investigation," rather than a "positive investigation." There, as in this case,[6] bad faith and negligence were not a part of the plaintiff's claim.
>
> The Court is generally of the opinion that Mr. Youngblood's testimony as to the propriety of the investigation by Defendant is irrelevant, as the Court has dismissed the bad faith and negligence claims against Defendant. Furthermore, it is for the Court and the jury to determine whether the alleged misrepresentations of Plaintiffs were material, and were, in fact, made. Thus, the Court is inclined to exclude such testimony, but will address this issue again upon further argument by the parties. Independently, the Court suggests possible *Daubert* problems in connection with Mr. Youngblood's testimony.

Subsequently, in an Order dated January 16, 2008, the Court noted that the parties agreed that Mr. Youngblood should be allowed to "take the policy and give a description of the damage portion of it that is relevant" to the case. Plaintiffs then requested that Mr. Youngblood be

---

[6] The Court previously granted summary judgment in favor of Defendant on several of Plaintiffs' claims, including bad faith and negligence.

allowed to submit the following additional opinions: (1) that Allstate investigated to lead to a denial rather than try to find coverage; (2) that Plaintiffs statements that they were two months behind on their mortgage, when they were actually seven months behind, is not material; (3) that whether Mr. Brawner was behind on his child support obligations is not material, and even if it was, Mr. Brawner testified that he was behind and did not testify to an amount or a date; (4) that the misrepresentations relied upon by Allstate are not material; (5) that Allstate should have focused on whether the insureds believed that Mr. Eagle had the capacity to go through with the sale of their home, rather than whether Mr. Eagle actually had the capacity to do so; (6) that Allstate should have required the inclusion of financial information on the application for insurance if Allstate intended to rely upon it as a basis for the denial of a claim; and (7) that Allstate should have investigated the racial threat based upon the sale of the home to an African-American to the same extent that it investigated the Brawners' financial situation.  This Court allowed the agreed upon testimony, but declined to allow Mr. Youngblood to testify regarding the additional matters, as those matters were for the jury, stating that the jury was capable of comprehending the facts in this case and drawing correct conclusions and some of the excluded opinions were not appropriately disclosed prior to trial.

     In the Supplemental Expert Opinion of John Youngblood submitted by Plaintiffs to Defendant, Plaintiffs state that they anticipate that Mr. Youngblood will testify as he did in the first trial of this case.  Additionally, Plaintiffs state that Mr. Youngblood will testify regarding the following: (1) that Allstate should have focused on the insureds' mental perception and situation with regard to the sale of the home, rather than the intentions of Ben Eagle; (2) that Allstate should not have relied upon the statement that the Brawners were behind two mortgage

payments in denying the claim; (3) that there is no evidence that the Brawners did not contact the VA for a deferment, and even if the Brawners did not contact the VA, that there was no prejudice to Allstate; (4) that there is no evidence that the Brawners actually received any notice of the proposed foreclosure sale; and (5) that the alleged misrepresentations would not have materially prejudiced Allstate under these circumstances.

The Court finds that Mr. Youngblood may not testify regarding the additional matters, as those matters are for the jury. The jury is capable of comprehending the facts in this case and drawing correct conclusions. Furthermore, if the parties stipulate regarding the remaining damages, Mr. Youngblood's description of the damage portion of the policy will not be relevant.

### C. Previous Evidentiary Rulings

Defendant requests that the Court adopt all previous evidentiary rulings made by the Court in preparation for the first trial of this matter as those rulings relate to the remaining issues before the jury at the retrial of this case. Plaintiffs state that the request is overly broad and Defendant should be required to set forth the specific rulings referenced.

The Court agrees. The Court declines to blanketly adopt all previous evidentiary rulings. As the Court has noted previously, some evidence that was relevant in the first trial is no longer relevant. Defendant's request is denied.

Accordingly,

IT IS THEREFORE ORDERED that Plaintiffs' Motion in Limine (Docket No. 193) be, and it is hereby, GRANTED in part, and DENIED in part.

IT IS FURTHER ORDERED that, Plaintiffs' Motion in Limine (Docket No. 195) be, and it is hereby, GRANTED in part, and DENIED in part.

IT IS FURTHER ORDERED that, Defendant's Motion in Limine (Docket No. 198) be, and it is hereby, GRANTED in part, and DENIED in part.

IT IS SO ORDERED this 18th day of August, 2008.

                                              /s/Garnett Thomas Eisele_____
                                              UNITED STATES DISTRICT JUDGE